IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


MACTEC, INC.,                          )

               Plaintiff        )

          v.                         )                          No.  3:05-cv-255

BECHTEL JACOBS COMPANY, LLC,   )

             Defendant      )


      and


DEMCO, INC.,                           )

               Plaintiff        )

          v.                         )                          No.  3:06-cv-265

MACTEC, INC.,                          )

             Defendant      )


## MEMORANDUM OPINION


These two consolidated diversity actions arise out of contracts for the demolition and disposal of several radioactively contaminated buildings at the K-25 Gaseous Diffusion Plant operated by the Department of Energy in Oak Ridge, Tennessee.  The following motions are currently pending:

(1)     Bechtel  Jacobs' motion for judgment on the pleadings [Court File #25 in No. 3:05-cv-255];

(2)     Bechtel Jacobs' motion for partial summary judgment, or in the alternative, to exclude evidence on contract issues [Court File #42 in No. 3:05-cv-255];

(3)     M A C T E C's  m o t i o n  f o r  l e a v e  t o  f i l e  a supplemental brief [Court File #50 in No. 3:05-cv-255];

(4)     Bechtel Jacobs' motion for partial summary judgment on MACTEC's fraud claim [Court File #53 in No. 3:05-cv-255];

(5)     MACTEC's motion to file a third-party complaint [Court File #14 in No. 3:06-cv-265];

(6)     Bechtel Jacobs' motion for partial summary judgment [Court File #26 in No. 3:06-cv-265];

(7)     M A C T E C's  m o t i o n  f o r  l e a v e  t o  f i l e  a supplemental brief [Court File #35 in No. 3:06-cv-265];

(8)     MACTEC's motion to strike Bechtel Jacobs' motion for summary judgment on plaintiff's fraud claim [Court File #41 in No. 3:06-cv-265];  and

(9)     Bechtel Jacobs motion for partial summary judgment on MACTEC's claims for breach of duty to verify bid and fraud [Court File #59 in No. 3:05-cv-255].


I.


For  good  cause  shown,  the  following  actions  are  hereby  taken:

MACTEC's motion for leave to file a supplemental brief [Court File #50 in No. 3:05-cv-255] will be granted;  MACTEC's motion for leave to file a third-party complaint

[Court File #14 in No. 3:06-cv-265] will be granted; MACTEC's motion to file a supplemental brief [Court File #35 in No. 3:06-cv-265] will be granted; and MACTEC's motion to strike Bechtel Jacobs' motion for summary judgment on MACTEC's fraud claim [Court File #41 in No. 3:06-cv-265] will be denied.

II.

***Factual Background***

The following factual allegations are considered in the light most favorable to the plaintiff.

The United States Department of Energy's Oak Ridge Operations (ORO) operated a uranium enrichment facility known as the K-25 Gaseous Diffusion Plant, which produced enriched uranium for, among other applications, nuclear weapons. In December 1997, ORO awarded a five-year, $2.5 billion Management and Integration contract to Bechtel Jacobs whereby ORO and Bechtel Jacobs would engineer a transition away from operations towards closure of the Oak Ridge facility. Following a three-month phase-in period, Bechtel Jacobs assumed responsibility for the work on April 1, 1998.

ORO awarded Bechtel Jacobs a subsequent contract that is known as a "Closure Contract." As part of that contract, Bechtel Jacobs was to demolish and dispose of several radioactively contaminated buildings in the Main Plant area. On April 17, 2000, Bechtel Jacobs issued a Request for Proposal No. 23900-RFP-ET081 (RFP), inviting proposals from subcontractors to demolish and dispose of the several radioactively contaminated buildings from the Main Plant. In response to the RFP, plaintiff MACTEC submitted a proposal for the Main Plant Demolition Project in the amount of $3.99 million, which was later adjusted to the final contract price of $5.36 million.

Bechtel Jacobs' internal estimate for the cost of the project was $8.20 million. The next lowest proposal for the project was $8.44 million. However, Bechtel Jacobs had not informed MACTEC that its proposal was significantly lower than Bechtel Jacobs' own internal estimate and significantly lower than the next lowest offeror.

Plaintiff claims that Bechtel Jacobs knew or should have known that the significant disparity in MACTEC's proposed price from all the other proposals was reason for a potential error in MACTEC's offer. It further contends that Bechtel Jacobs did not adequately verify MACTEC's proposal and failed to alert MACTEC that its offer price was significantly lower than the other estimates for the work.

Bechtel Jacobs nevertheless awarded the subcontract to MACTEC for the price of $2.9 million lower than Bechtel Jacobs' own internal estimates and $3.1 million lower than the next offeror's price. This approximately $3 million disparity existed on a contract with MACTEC for only $5.36 million. MACTEC asserts that Bechtel Jacobs failed and refused to disclose this significant bid disparity and potential error to MACTEC, and that MACTEC reasonably relied on the absence of this disclosure in entering into the subcontract.

Plaintiff claims that Bechtel Jacobs failed to make the disclosure in bad faith for its own self-interest and economic benefit and failed to make the disclosure in order to mislead MACTEC into believing that there were no significant discrepancies in their bid for the sole purpose of obtaining an unfair and undue advantage. It was only after MACTEC filed its initial complaint in this case and initiated discovery that MACTEC discovered this substantial discrepancy in the pricing.

MACTEC contends that it has incurred actual costs of approximately $8.43 million, which is substantially in excess of its contract award in the amount of $5.36 million. Bechtel Jacobs has failed and refused to pay MACTEC for any of its additionally incurred costs.

Plaintiff further contends that the parties' Subcontract incorporates federal procurement law and that the Federal Acquisition Regulations (FARs), as part of federal procurement law, require that a contractor such as Bechtel Jacobs verify and notify a bidder, such as MACTEC, when the contractor has reason to know of a significant disparity or potential error in the bidder's bid.

MACTEC contends that Bechtel Jacobs also required MACTEC to use the Multi-Agency Radiation Surveys and Site Investigation Manual (MARSSIM), which is a cost-effective method designed to require fewer measurements than other methods used to evaluate radiological facilities in preparation for their demolition and disposal. Plaintiff claims Bechtel Jacobs misapplied MARSSIM by forcing MACTEC to adhere to a rigid, expensive, prescripted methodology of evaluating these facilities.

Further, the Environmental Management Waste Management Facility (EMWMF) is a local mixed waste disposal facility located at the Y-12 Facility. The subcontract required MACTEC to satisfy EMWMF's Waste Acceptance Criteria (WAC) when disposing of waste at that facility. MACTEC relied upon the WAC issued by Bechtel Jacobs for the planning and scheduling of the performance of its work on the Project. The subcontract's technical specifications also required that MACTEC properly manage all waste and materials until such time as the EMWMF

was open to accept all waste.  Notably, the technical specifications did not describe the operational constraints associated with the disposal of waste at the EMWMF.

Bechtel Jacobs' Request for Proposal (RFP) indicated that the debris would include trace amounts of Tc-99 (a radioactive contaminant).  Plaintiff contends that Bechtel Jacobs made the following representations to MACTEC regarding disposal of the waste at EMWMF:

1.      Cell hours are anticipated to be 8:00 a.m. to 5:00 p.m. Monday through Friday;

2.      Turnaround time would be 45 minutes for direct dump waste delivery (dump trucks or roll-offs that dump directly);

3.      The schedule for the type of waste and the rate at which the waste will be shipped to the cell will be determined during weekly meetings;

4.      MACTEC was required to schedule waste shipments at a reasonably consistent rate so that cell personnel would not be overloaded;  and

5.      Bechtel Jacobs' guidance documents stated that consistency of delivery and the debris/soil ratio were critical with respect to the operation of the EMWMF.

MACTEC relied upon EMWMF's WAC and Bechtel Jacobs' representations in the planning of its waste disposal at the EMWMF.

Plaintiff complains that Bechtel Jacobs breached its subcontract with MACTEC by failing to timely approve and provide authorization to ship waste to the EMWMF; by failing to properly schedule and coordinate the work on the Project; by delaying MACTEC's execution of its scope of work; by failing to timely provide RADTech's survey and release MACTEC's containers; by increasing MACTEC's decontamination efforts due to Bechtel Jacobs' failure to timely provide authorization to dispose of waste at the EMWMF; by misapplying MARSSIM; by misrepresenting the actual classification of the buildings; by failing to verify MACTEC's bid; and by significantly increasing MACTEC's disposal costs because Bechtel Jacobs' impacts caused MACTEC to ship waste from the Tennessee Project site to Envirocare of Utah, LLC.

MACTEC began preparing its waste profile documentation for the debris associated with the Main Plant immediately after receiving authorization on May 6, 2002. MACTEC submitted its first profile on August 6, 2002, but did not receive an authorization from Bechtel Jacobs to ship waste to the EMWMF until January 27, 2003. As a result of the delayed approval and authorization to ship waste to the EMWMF, MACTEC incurred substantial additional costs and delays associated with the delayed authorization and staggered nature of the disposal authorization from Bechtel Jacobs. Further, since the majority of its demolition activities were complete by the fall of 2002, MACTEC was required to manage and store the debris

associated with its demolition activities for a substantially longer period of time than originally anticipated. During this period, MACTEC rented a substantial number of roll-off containers to store the debris until it received from Bechtel Jacobs the authorization to dispose of the material at the EMWMF. Bechtel Jacobs failed to timely issue this requisite authorization, and Bechtel Jacobs wholly failed to coordinate and schedule the work on the Project.

Plaintiff contends that in addition to its failure to timely provide authorization and its active interference in delaying MACTEC's work, Bechtel Jacobs was also responsible for numerous other deficiencies that caused MACTEC to suffer substantial losses, including the following:

1.     Bechtel Jacobs failed to coordinate scheduling meetings between its subcontractors on the Project. As a result of this inconsistency in scheduling, MACTEC's trucks were often stacked up at the cell waiting to enter the cell and dispose of the debris;

2.     The EMWMF operation also suffered several equipment-related problems that directly impacted MACTEC's ability to perform its work;

3.     In June 2003, MACTEC experienced a substantial delay of approximately three weeks when the EMWMF disposal operations were shut down due to a lack of cover material at the cell;

4.     Changes in the security procedures at the EMWMF also impacted MACTEC's disposal operations;

5.     Bechtel Jacobs also significantly increased MACTEC's costs by failing to timely have RADTech approve the release of MACTEC's containers;  and

6.     MACTEC incurred substantial additional decontamination costs of its roll-off containers because of the extended duration in which debris was stored in roll-off containers awaiting authorization to dispose of waste at the EMWMF.

Plaintiff contends that each of these deficiencies and interferences rendered MACTEC's work substantially more inefficient and costly.  Moreover, contrary to Bechtel Jacobs' RFP, the Project debris contained significantly more amounts of Tc-99 contamination.   This forced MACTEC to alter its proposed method of accomplishing its plan.  MACTEC estimates that its inefficiency losses attributable to breaches of the contract by Bechtel Jacobs amounted to over $2,795,695.90.

MACTEC's second amended complaint alleges the following causes of action:

1.     Breach of contract;

2.     *Quantum meruit*;

3.     Unjust enrichment;

4.     Breach of implied covenant of good faith and fair dealing;

5.     Fraud;

6.     Breach of the duty to verify bid;  and

7.     Violations of the Tennessee Consumer Protection Act.

In the several motions Bechtel Jacobs has filed, they contend that the vast majority of these claims should be dismissed either on motion for judgment on the pleadings or motion for summary judgment.

III.

### *Standard of Review*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the

motion.  However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Id.*  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial.  *Catrett*, 477 U.S. at 322.

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as the standard for a motion to dismiss under Rule 12(b)(6).  *Ketron v. Chattanooga-Hamilton County Hospital 40*, 919 F.Supp. 280, 282 (E.D. Tenn. 1996).  A motion under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint.  *Scheid v. Fannie Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  The standard for dismissal under Rule 12(b)(6) requires the court to take all factual allegations in the complaint as true, and "the claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.*

For the sake of simplicity, the court will consider the viability of each of plaintiff's causes of action as they are set out in the second amended complaint.

IV.

***Breach of Contract***

Bechtel Jacobs contends that when MACTEC made its final payment under the contract to it, it executed a release which effectively settled all contract disputes between the parties. This provision is known as Special Conditions Article 15 (SC-15) entitled "Invoicing and Payment", which provides in relevant part:

. . .

> CONTRACTOR shall, within sixty days following the Final Acceptance of the Work and after submittal of such final invoice, pay to SUBCONTRACTOR the amount then remaining due, provided that SUBCONTRACTOR shall furnish CONTRACTOR for itself, its sub-tier subcontractors, immediate and remote, and all material suppliers, vendors, laborers, and other parties acting through or under it, waivers and releases of all claims against CONTRACTOR or the Government arising under or by virtue of this Subcontract, except such claims, if any, as may with the consent of CONTRACTOR be specifically excepted by SUBCONTRACTOR from the operation of the release in stated amounts to be set forth therein.

Cloud Declaration, Ex. B at 11-12. Bechtel Jacobs issued a "Certificate of Final Acceptance" of MACTEC's work on August 6, 2004. MACTEC submitted its final invoice for payment on August 4, 2004. MACTEC's Contracts Manager, Thomas

Ciaccia, executed a Release and Certificate of Final Payment dated August 3, 2004. The final REA sought a total amount of $1,126,577.77. Bechtel Jacobs contends that seeking any amount in excess of this is barred by the release purportedly issued by Mr. Ciaccia.

A number of questions of material fact remain to be determined with respect to whether any or all of plaintiff's contract claims are barred by this release. First, the release language itself is ambiguous and cannot be understood without consideration of the remainder of the negotiations and contracts entered into between the parties. Second, a question of material fact remains with respect to whether Mr. Ciaccia had the authority or apparent authority to execute such an important release on behalf of MACTEC. Third, no mention of this release was made by Bechtel Jacobs until earlier this year. Execution of a release is an affirmative defense that, if not timely pled, may be waived. Under the circumstances, Bechtel Jacobs is not entitled to summary judgment on the breach of contract claim set out in Count I.

V.

### *Quantum Meruit and Unjust Enrichment*

With respect to plaintiff's claims of unjust enrichment and *quantum meruit*, Bechtel Jacobs makes two arguments: (1) that the theories of unjust

14

enrichment and *quantum meruit* are legally the same; and (2) that MACTEC's allegations that there is an enforceable subcontract between the parties should preclude MACTEC from pleading either theory in the alternative.

Rule 8(e)(2) expressly provides that a plaintiff has wide latitude in pleading claims in the alternative, such as an implied contract cause of action where an actual contract does not exist or is held invalid for whatever reason. The court finds that plaintiff has sufficiently pled the theories of unjust enrichment and *quantum meruit*. In addition, although Tennessee law recognizes that unjust enrichment and *quantum meruit* are "essentially the same," they are not identical. *Compare Whitehaven Community Baptist Church,* 973 S.W. 2d 592, 596 (Tenn. 1998), *with Swafford v. Harris*, 967 S.W.2d 319 (Tenn. 1998). Plaintiff has properly pled causes of action for *quantum meruit* and unjust enrichment.

VI.

***Breach of Implied Covenant of Good Faith and Fair Dealing***

Count IV of the amended complaint alleges that Bechtel Jacobs breached the implied covenant of good faith and fair dealing that applied to the Subcontract. Bechtel Jacobs has not denied that that implied covenant applies in this

case.  Accordingly, the court finds that questions of material fact remain with respect to this count.

VII.

**_Fraud_**

Count V of MACTEC's second amended complaint identifies four alleged misrepresentations by Bechtel Jacobs that allegedly constitute fraud.  They are:  (1) how the work would be scheduled and coordinated;  (2) how the MARSSIM would be applied;  (3) the "true classification" of the Main Plant buildings to be demolished;  and (4) the failure to disclose MACTEC's bid disparity and/or potential error.

Upon a careful review of these allegations, it appears that the first two listed are examples of promissory fraud.  Under Tennessee law, the elements of fraud are:  (1) intentional misrepresentation with regard to a material fact;  (2) defendant's knowledge of the representation's falsity, _i.e._, it was made knowingly, without belief in its truth, or recklessly, without regard to its truth or falsity;  (3) plaintiff's reasonable reliance on the misrepresentation resulting in damages to the plaintiff;  and (4) the misrepresentation relates to an existing or past fact.  _Oak Ridge_

*Precision Industries, Inc. v. First Tennessee Bank NA*, 835 S.W.2d 25, 29 (Tenn. Ct. App. 1992).

For claims based on promissory fraud, the plaintiff must prove that there was a promise of future action without the present intent to carry out the promise. *Id.* at 29 n.2. With respect to the first two allegations above concerning how the work would be scheduled and coordinated and how the MARSSIM would be applied, I find that plaintiff has sufficiently alleged promissory fraud under Tennessee law.

With respect to the third allegation concerning the "true classification" of the Main Plant buildings to be demolished, I find that the plaintiff has sufficiently alleged all of the four basic elements of fraud, based on allegations that Bechtel Jacobs misled the plaintiff regarding the level of radioactivity in the buildings.

Finally, with respect to the allegations concerning the failure to disclose MACTEC's bid disparity and/or potential error, I find that there is no sufficient allegation of either common fraud or promissory fraud, and the viability of this claim depends upon whether Bechtel Jacobs had a duty to disclose this information. This simply is not a fraud claim. Based on the following section, the court finds as a matter of law that Bechtel Jacobs did not have such a duty to MACTEC.

VIII.

## *The Duty to Verify the Bid*

Count VI of the second amended complaint alleges that Bechtel Jacobs had a duty to notify MACTEC of the significant discrepancy between MACTEC's offer, Bechtel Jacobs' internal estimate, and the next lowest offeror's price. The court finds that Bechtel Jacobs did not have such a duty and, even if it had, it sufficiently complied with it.

Plaintiff contends that under the Federal Acquisition Regulation (FAR), the Code of Federal Regulations (48 CFR § 1.000, *et seq.*), there are "uniform policies and procedures for acquisitions by all [Federal] executive agencies." FAR 1.101. Quite simply, Bechtel Jacobs is a private corporation, not a federal agency. The subcontract was awarded in connection with Bechtel Jacobs' performance of a contract with DOE, but it is undisputed that Bechtel Jacobs signed contract with DOE did not require Bechtel Jacobs to utilize or apply generally the provisions of the FAR to its process for awarding subcontracts. Accordingly, there is no basis for concluding that FAR 14.407-1 governs Bechtel Jacobs' conduct. In fact, contrary to MACTEC's assertion, the RFP specifically provided that:

> Any Offeror planning to submit a proposal is responsible for examining with appropriate care the complete Solicitation and all amendments and is also responsible for informing

itself with respect to all conditions that might in any way affect the cost performance of any work. Failure to do so will be at the sole risk of the Offeror and no relief for errors or omissions by the Offeror can be given.

Further, MACTEC acknowledged this provision and certified as follows:

The undersigned [MACTEC] certifies that it has examined and is fully familiar with all of the provisions of the Subcontract Documents and any amendments thereto; that it has carefully checked all of the words and figures shown in its Schedule of Quantities and Prices; that it has carefully reviewed the accuracy of all statements in this Proposal and attachments thereto; and that it has by careful examination of the actual site conditions, satisfied itself as to the nature and location of all work, the general and local conditions to be encountered in the performance of any work, the requirements of the subcontract and all other matters which can in any way affect work or the cost thereof. The undersigned hereby agrees CONTRACTOR [BJC] shall not be responsible for any errors or omissions on the part of the undersigned in preparing this Proposal.

In addition, even if the FAR was applicable to Bechtel Jacobs' process of soliciting proposals and awarding subcontracts, the provision relied upon by MACTEC would be inapplicable. FAR 14.407-1 is a part of FAR Part 14, which governs the awards of contracts by sealed bidding. In this case, Bechtel Jacobs did not use a sealed bid procedure method, where the competition is on the basis of price alone. Rather, the procurement process utilized by Bechtel Jacobs was to solicit both technical proposals and prices from the offerors. The technical proposals were to be evaluated for adequacy and understanding of the work on a pass-fail basis, and the subcontract was to be awarded to the lowest, technically acceptable offeror. Thus,

the provision relied upon by MACTEC is inapplicable, as it related only to sealed bid procurement and there is no comparable provision in Part 15 of the FAR. Accordingly, there was no legally cognizable duty on the part of Bechtel Jacobs to verify MACTEC's bid.

Finally, the failure to verify a bid can provide a basis for equitable reformation only in very specific and limited circumstances, such as where there is clear and convincing evidence that a mistake, in fact, occurred prior to the award. *Leibherr Crane Corp.*, 810 F.2d at 1153.  The testimony of MACTEC's corporate representatives demonstrate that MACTEC made no mistake in its technical proposal or the pricing of its offer for the subcontract.  Both Mr. Reid and Mr. Rima testified on MACTEC's behalf that MACTEC's proposal was technically sound and the pricing was in line with the technical proposal.  *See* Ex. 10, Reid Deposition at 99:14-101:6.  In light of the foregoing, Bechtel Jacobs is entitled to summary judgment on Count VI of the second amended complaint.

## IX.

### *Plaintiff's Claim Under the Tennessee Consumer Protection Act*

Count VII of the second amended complaint seeks recovery for attorney fees under the Tennessee Consumer Protection Act (TCPA), T.C.A. § 47-18-101,

*et seq.* The TCPA does not apply to all business activity in the State, but rather protects "consumers." *Pursell v. First American National Bank*, 937 S.W.2d 838, 841 (Tenn. 1996). A "consumer" is defined in the TCPA as "any natural person who seeks or acquires by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services, or property. ... ." T.C.A. § 47-18-103(2). Moreover, the TCPA applies only to "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." T.C.A. § 47-18-104. The terms "trade" and "commerce" are specifically defined in the TCPA as "the advertising, offering for sale, lease, or rental, or distribution of any goods, services, or property. ... ." T.C.A. § 47-18-103(11).

In this case, Bechtel Jacobs is alleged to be the prime contractor under a contract with the U.S. Department of Energy. MACTEC is alleged to be a sub-contractor, awarded a subcontract by Bechtel Jacobs to demolish and dispose of several buildings. As such, Bechtel Jacobs is alleged to be the purchaser of demolition and waste disposal services supplied by MACTEC. Where the defendant was not selling anything to the plaintiff, and the actions of the defendant did not affect the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, no claim under the TCPA is properly pled. *See Wagner v. Fleming*, 139 S.W.3d 295, 301 (Tenn. Ct. App. 2004) (denying claim under TCPA because defendant was not offering anything for sale). *See also Pursell*, 937

S.W.2d at 841 (denying claims under TCPA because activity at issue did not affect trade or commerce as defined in the TCPA). In light of the foregoing, plaintiff MACTEC does not state a claim under the Tennessee Consumer Protection Act.


                                    X.

                              *Conclusion*


        In light of the foregoing, Bechtel Jacobs' motion for judgment on the pleadings and summary judgment will be granted to the extent that Counts VI and VII of the second amended complaint will be dismissed, as is plaintiff's fraud claim that Bechtel Jacobs failed to notify it of the discrepancy between its bid and those of the other bidders, as well as Bechtel Jacobs' in-house estimate. In all other respects, the motion will be denied. Accordingly, the pending motions are disposed of as follows:

        1.      Bechtel Jacobs' motion for judgment on the pleadings [Court File #25 in No. 3:05-cv-255] will be granted in part and denied in part in accordance with this memorandum opinion;

        2.      Bechtel Jacobs' motion for partial summary judgment, or in the alternative, to exclude evidence on contract issues [Court File #42 in No. 3:05-cv-255] will be denied;

        3.      Plaintiff MACTEC's motion to file a supplemental brief [Court File #50 in No. 3:05-cv-255] will be granted;

4.    Bechtel Jacobs' motion for partial summary judgment on MACTEC's fraud claim [Court File #53 in No. 3:05-cv-255] will be granted in part and denied in part consistent with this memorandum opinion;

5.    MACTEC's motion for leave to file third-party complaint [Court File #14 in No. 3:06-cv-265] will be granted;

6.    Bechtel Jacobs' motion for partial summary judgment [Court File #26 in No. 3:06-cv-265] will be denied;

7.    MACTEC's  motion for leave to file a supplemental brief [Court File #35 in No. 3:06-cv-265] will be granted;

8.    Bechtel Jacobs' motion partial summary judgment on MACTEC's fraud claim [Court File #38 in No. 3:06-cv-265] will be granted in part and denied in part in accordance with this memorandum opinion;

9.    MACTEC's motion to strike Bechtel Jacobs' motion for summary judgment on fraud claim [Court File #41 in No. 3:06-cv-265] will be denied;  and

10.    Bechtel Jacobs' motion for partial summary judgment on MACTEC's claim for breach of duty to verify bid and fraud [Court File #59 in No. 3:05-cv-255] will be granted in part and denied in part in accordance with this memorandum opinion.


Order accordingly.


_____
      **s/  Thomas W. Phillips**
      UNITED STATES DISTRICT JUDGE